\*\*E-Filed 8/30/2011\*\*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| ALYCE FOSTER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMUNITY HOSPITAL OF THE MONTEREY PENINSULA, LAURA WILLIAMS, and ARTHUR MCKENZIE,<br><br>　　　　Defendants. | Case No. 11-cv-01679 JF (HRL)<br><br>ORDER[1] GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>[Re: Docket No. 5] |

Defendants Community Hospital of Monterey Peninsula ("Community"), Laura Williams, and Arthur McKenzie move pursuant to Fed. Rs. of Civ. Pro. 12(b)(1) and 12(b)(6) to dismiss the complaint filed by Plaintiff Alyce Foster ("Foster"). The Court has considered the moving and responding papers and the oral arguments presented at the hearing on July 1, 2011. For the reasons discussed below, the motion will be granted, without prejudice as to Foster's race discrimination claim against Community and with prejudice as to Williams and McKenzie.

---

[1] This disposition is not designated for publication in the official reports.

## I. BACKGROUND

The complaint alleges the following facts. Foster, an African-American woman, has been employed by Community for the past five years. Compl. 1:18-22, 2:11-17. Prior to the events giving rise to this lawsuit, she worked as a unit receptionist and performed exclusively clerical work. Compl. 2:17-22. Foster was the only African-American in her unit. Compl. 2:12-13. Community knew when it hired her that Foster had a pre-existing back injury. Compl. 2:22-24.

On December 3, 2009, Community opened an overflow unit called Garden West. Compl. 3:3. That evening, Foster volunteered to assist the registered nurses by turning down beds and ensuring that patients had gowns and bed basins. Compl. 3:3-7. While moving an overweight patient, Foster re-injured her lower back and went to the emergency room for treatment. Compl. 3:9-11.

Pursuant to company policy, Foster filed a workers' compensation claim. Compl. 3:12-13. She stayed home for one week and upon her return to work was restricted to light duty. Compl. 3:13-14. Foster did not receive compensation for the week that she was required to stay home, despite the fact that she had filed a claim with the Human Resources Department ("HR"). Compl. 3:12-16.

On December 10, 2009, Williams, the nurse manager, called Foster and told her to report to HR. Compl. 3:17-19. Foster met with Williams and an HR Administrator, McKenzie, and they offered Foster a voluntary layoff, which she refused. Compl. 3:19-23. The next day, at HR's request, Foster signed an agreement not to lift patients. Compl. 4:2-3. On that same day, McKenzie sent Foster a letter stating that the unit reception position would be merged with the certified nursing assistant position starting on January 4, 2010. Compl. 4:3-6. Because she was on restricted duty, Foster could not qualify for the new position. Compl. 4:6-8.

On December 30, 2009, Williams and McKenzie allegedly forced Foster to take medical leave. Compl. 4:17-18. Foster began treatment, which consisted routine examinations and physical therapy, in April 2010. Compl. 4:24-5:2. On February 16, 2011, Foster was diagnosed with a torn ligament in her right hip; she continues to experience pain and numbness in her leg and may require surgery. Compl. 5:3-6.

On April 30, 2010, Foster was allowed to return to work, but she was not restored to her unit receptionist position, despite the fact that the position was open. Compl. 5:6-11. Instead, she was assigned to the float pool, and her duties are limited to answering phones and monitoring security cameras. Compl. 5:7-13. Foster earns only $18.89 per hour at her new position, rather than the $24.12 per hour that she earned as a unit receptionist. Compl. 5:18-19. She is a part-time employee and no longer has benefits because she works only sixteen hours per pay period, as opposed to the eighty hours per pay period that she worked as a unit receptionist. Compl. 5:18-23.

On February 22, 2010, Foster filed a claim with the California Department of Fair Employment and Housing ("DFEH"). Compl. 6:3-6. Although she expressed concern with respect to both race and disability discrimination during her intake interview, her written claim alleged only disability discrimination. Decl. of Damon Ex. 2 at 1; Req. for Judicial Notice Ex. A. The actual claim form, which also was deemed to have been filed with the United States Equal Employment Opportunity Commisssion ("EEOC"), specifically alleged employment discrimination under the Americans with Disabilities Act ("ADA"). Compl. 6:6-7; Req. for Judicial Notice Ex. B. On December 17, 2010, DFEH issued a right to sue letter. Compl. 6:8-9. On January 12, 2011, the EEOC issued a dismissal and notice of rights. Compl. 6:12-14.

## II. LEGAL STANDARD

A complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the defendant may facially or factually attack jurisdiction. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Defendants assert a factual attack, arguing that Foster did not exhaust her administrative remedies. Defs.' Mot. to Dismiss at 5-6. In the context of a 12(b)(1) motion, a defendant may submit evidence to attack the jurisdictional allegations in the complaint. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). In response, a plaintiff must present evidence to establish that the court has subject matter jurisdiction. *Id.*

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Only where the complaint lacks a "cognizable legal theory or

sufficient facts to support a cognizable legal theory" is Rule 12(b)(6) dismissal appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has "facial plausibility" when enough facts are pled to allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 556. Allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). A court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

A court must grant an opportunity to amend unless it is clear that the complaint cannot be cured. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248-49 (9th Cir. 1995). In determining whether to dismiss a complaint, a court considers "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). When amendment would be futile, dismissal may be appropriate. *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996).

### III. DISCUSSION

The instant complaint alleges that Defendants engaged in discriminatory conduct based on Foster's race.[2] Compl. 2:11-14. Foster claims that she is the only African-American in her unit at Community, and that Defendants removed her from her unit receptionist position, reduced her hourly pay, and cut her work hours. *Id.*

**A. Exhaustion Doctrine**

Defendants contend that Foster failed to exhaust her administrative remedies with respect

---

[2]Defendants do not seek dismissal of Foster's disability discrimination claim against Community.

4

1  to a claim of racial discrimination.  Defs.' Mot. to Dismiss at 5-6.  As noted above, Foster's
2  adminstrative claim was limited to disability discrimination, and the administrative actions taken
3  by the DFEH and EEOC make no reference to race.
4      Foster points out, however, that the DFEH interviewer noted expressly that Foster
5  claimed she had been "harassed because of [her] race (African-American) and disability (back
6  injury) and in retailiation for filing a worker's (sic) compensation claim."  Decl. of Damon Ex. 2
7  at 4.  In the intake notes, the interviewer wrote that Foster's protected class was "disability."
8  Decl. of Damon Ex. 2 at 5.  Foster explains the interviewer filled out the claim form, which she
9  then signed.  Decl. of Foster at 5.
10     A plaintiff must file a complaint with the EEOC before bringing a Title VII action.  42
11 U.S.C. § 2000e-5(f)(1).[3]  A federal court lacks subject matter jurisdiction if the plaintiff does not
12 exhaust her administrative remedies.  *Equal Employment Opportunity Comm'n v. Farmers Bros.*
13 *Co.*, 31 F.3d 891, 899 (9th Cir. 1994).  The jurisdictional scope of a Title VII claim depends on
14 the scope of the EEOC charge and investigation.  *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.
15 1990).
16     A federal court may not consider incidents of discrimination that were not reviewed by
17 the EEOC unless the new claim is "like or reasonably related to the allegations in the EEOC
18 charge."  *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973) (citation
19 omitted).  In analyzing an EEOC charge, the court must "construe the charge liberally," *Sosa*,
20 920 F.2d at 1456, because requiring an employee to "return to the state agency every time he
21 claims a new instance of discrimination... would erect a needless procedural barrier."  *Oubichon*,
22 482 F.2d at 571.  Jurisdiction is not limited to the actual EEOC investigation but may include
23 claims that "'can reasonably be expected to grow out of the charge of discrimination.'"  *Id.*
24 (citation omitted).
25     Here, it appears that Foster has exhausted her administrative remedies with respect to a

---

[3][W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge... by the person claiming to be aggrieved. 42 U.S.C. § 2000e-5(f)(1).

claim of disability discrimination, but not with respect to a claim of race discrimination. Even assuming that Foster *intended* to assert claims for both types of discrimination, it is undisputed that the administrative agency *investigated* only the disability claim. Indeed Foster received written notice that the EEOC would investigate her employment discrimination charge under the Americans with Disabilities Act ("ADA"), and not Title VII. Req. for Judicial Notice Ex. B.

Disability discrimination is not reasonably related to race discrimination because "[t]he two claims involve totally different kinds of allegedly improper conduct, and investigation into one claim would not likely lead to investigation of the other." *Rodriguez v. Airborne Express*, 265 F.3d 890, 897 (9th Cir. 2001). Foster's Title VII claim is not a logical outgrowth of her ADA claim. When a plaintiff alleges a different theory of discrimination, it does not matter that the charge arises from the same event. *Shah v. Mt. Zion Hosp. & Med. Ctr.*, 642 F.2d 268, 271-72 (9th Cir. 1981).

**B. Individual Liability**

Williams and McKenzie argue that they should be dismissed from this action because Foster has failed to state a claim against them. Individual employees and supervisors cannot be held personally liable for employment discrimination under Title VII. *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1179 (9th Cir. 2003). Additionally, a plaintiff may sue only the defendants named in the EEOC charge. *Sosa*, 920 F.2d at 1458. Neither Williams nor McKenzie were named in Foster's DFEH and EEOC complaints.

### IV. ORDER

The motion to dismiss is GRANTED, without prejudice as to Foster's race discrimination claim and with prejudice as to Williams and McKenzie. Community shall file its answer with respect to Foster's disability discrimination claim within twenty (20) days of the date of this order.

IT IS SO ORDERED.

DATE: 8/26/2011

JEREMY FOGEL
United States District Judge